IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
and SIERRA CLUB,

      **Plaintiffs,**

v.                              **CIVIL ACTION NO. 2:12-cv-3750**

**FOLA COAL COMPANY, LLC,**

      **Defendant.**

### MEMORANDUM IN SUPPORT OF DEFENDANT'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PHASE II

### I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' Complaint alleges that Fola Coal Company, LLC ("Fola") is in continuing violation of an "effluent standard or limitation" for selenium at four outlets regulated by two National Pollutant Discharge Elimination System ("NPDES") permits, Permit No. WV1013815 and Permit No. WV1017934 ("the Permits"), which constitutes a continuing violation of the Clean Water Act ("CWA") and Surface Mining Control and Reclamation Act ("SMCRA").[1] ECF No. 1 (Complaint). At the time that Plaintiffs' Complaint was filed, the Permits contained no express effluent limits for selenium. *See* ECF Nos. 32-1 & 32-2. Instead, Plaintiffs' allegations in this case rely on a generic condition contained in the Permits that requires compliance with § 47-30-5.1.f of the West Virginia Code of State Rules ("WVCSR"), providing that discharges covered by an NPDES permit "are to be of such quality so as not to cause violation of applicable water quality standards."

---

[1] Three of the outlets, 022, 023, and 027, are regulated by Permit No. WV1013815, and the fourth outlet, 009, is regulated by Permit No. WV1017934.

By Order entered December 19, 2013, this Court agreed that Fola is "in violation" of the generic condition contained in the Permits. ECF No. 70 (Memorandum Opinion and Order). As a consequence, the Court granted partial summary judgment in Plaintiffs' favor on liability in Phase I of the case. *Id*. On March 21, 2014, the Court adopted the Parties' proposed schedule for Phase II of the case, relating to the nature of relief or remedies. ECF No. 73 (Scheduling Order). The Parties agreed that Defendant would file a motion regarding mootness prior to any of the discovery deadlines in Phase II. *See* ECF No. 72 ("[T]he Parties have agreed upon and propose a briefing schedule and a hearing before the Court on Defendant's motion prior to the discovery deadlines.").

By its *Motion for Partial Summary Judgment as to Phase II*, Fola informs the Court that it is no longer in violation of its two NPDES permits regulating all four outlets at issue in this case based on revisions to the Permits that were made after the Court's Order of December 19, 2013.[2] On January 17, 2014, the West Virginia Department of Environmental Protection ("WVDEP") reissued Permit No. WV1013815, and on February 28, 2014, WVDEP reissued Permit No. WV1017934. *See* Exhibits 1 and 2 (Reissued Permits). When it reissued the Permits, WVDEP imposed effluent limits on selenium that Fola is required to meet within twenty-six months of reissuance of the Permits and compliance schedules that set forth milestones that Fola must accomplish during the interim period before the selenium limits become effective. *Id*. More than thirty days has passed since the Permits were reissued and no parties, including Plaintiffs, have challenged the terms and conditions of the reissued Permits.[3]

---

[2] During Phase I, Fola raised certain defenses to Plaintiffs' claims and argued that its discharges of selenium were not in violation of its Permits, the CWA, or SMCRA. Through this motion, Fola does not waive these defenses and reserves the right to raise them in an appeal.

[3] Any person who is aggrieved by the terms and conditions of a permit issued or reissued by WVDEP may submit comments to WVDEP and/or appeal the permit to the West Virginia Environmental Quality Board ("EQB"). W. Va. Code § 22-11-21; WVCSR § 47-30-10.2. Plaintiffs did not submit comments to WVDEP regarding the reissuance of Fola's Permits, nor did they file an appeal of the Permits with the EQB.

Both Permit No. WV1013815 and Permit No. WV1017934 require Fola to comply with selenium limits at the four outlets at issue in this case no later than twenty-six months after effective date of reissuance of the Permits. Ex. 1 at p. 19; Ex. 2 at p. 13. In the interim, the compliance schedules contained in the Permits require Fola to meet several milestones by specified deadlines, including deadlines for completing the final design of the selenium treatment systems selected, commencing construction of the treatment systems, and completing construction of the treatment systems. *Id*. The Rationale Pages prepared by WVDEP to justify the terms and conditions imposed in the Permits explain that a compliance schedule is being included in the Permits to allow Fola additional time to achieve compliance with final selenium limits. Ex. 1 at p. 28; Ex. 2 at pp. 25-26.

## II.     ARGUMENT

### A.     Summary Judgment Standard

A motion for summary judgment should be granted when the moving party demonstrates that there is no genuine issue as to any material fact and that, based on those facts, he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When the moving party meets this burden, the non-moving party must go beyond the pleadings to identify "concrete evidence" upon which a reasonable fact finder could enter judgment in the non-moving party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

### B.     The Reissuance of Fola's Permits with Compliance Schedules and Future Selenium Limits Renders Plaintiffs' Claims for Injunctive Relief Moot and Plaintiffs' Claims for Civil Penalties Partially Moot

Because Fola is now subject to compliance schedules that give it twenty-six months to meet its selenium limits, Fola is no longer "in violation" of its Permits, and the Court should not further entertain Plaintiffs' request for injunctive relief or for civil penalties for any

discharges of selenium that occurred after the dates that the Permits were reissued. In its recent Memorandum Opinion and Order in *Ohio Valley Envtl. Coalition, Inc., et al. v. Alex Energy, Inc., et al.*, Case No. 2:12-cv-3412 (March 31, 2014) ("*Alex Energy* Order"), this Court ruled that when WVDEP includes a compliance schedule and future effluent limits for selenium, the permit holder is not required to comply with the water quality standards for selenium in the interim period after the issuance of the permit and before the selenium limits become effective. *Alex Energy* Order at p. 18. Due to the prospective nature of injunctive relief, Plaintiffs' request for injunctive relief is moot now that Fola is no longer in violation of its Permits. In addition, Plaintiffs are not entitled to civil penalties for any discharges of selenium that occurred after the date that the Permits were reissued, because any such discharges were not in violation of the Permits.

1. **The Compliance Schedules and Future Selenium Limits in Fola's Reissued Permits Supersede the General Provision Requiring Discharges to Comply with Water Quality Standards**

The United States Court of Appeals for the Fourth Circuit has explained that NPDES permits must be read and interpreted as one would interpret a contract or other legal document. *Piney Run Preservation Ass'n v. County Comm'rs of Carroll Cnty.*, 268 F.3d 255, 269 (4th Cir. 2001) ("In analyzing a provision of an NPDES permit, we review the district court's interpretation in the same manner as we would contracts or other legal documents."). A basic principle of contract interpretation is that separately added terms prevail over standard portions of a contract. *See B. Elliott (Canada) Ltd. v. John T. Clark & Son of Maryland, Inc.*, 704 F.2d 1305, 1308 (4th Cir. 1983) ("According to general rules of contract interpretation, separately negotiated or added terms will prevail over the conflicting printed part of a contract."). Additionally, terms that are specific govern over terms that are general. *See Abraham v.*

*Rockwell Intern Corp.*, 326 F.3d 1242, 1254 (Fed. Cir. 2003) ("'[W]here specific and general terms in a contract are in conflict, those which related to a particular matter control over the more general language.'") (internal citations omitted); *Karrell v. U.S.*, 181 F.2d 981, 986-87 (9th Cir. 1950) ("It is a familiar rule of statute interpretation that a specific provision will govern even though general provisions, if standing alone, would include the same subject."); Restatement (Second) of Contracts § 203(c) (1981) ("Specific terms and exact terms are given greater weight than general language.").

The permit provision on which Plaintiffs' claims rely is a reference in the Permits to WVCSR § 47-30-5.1.f, which is one of many regulatory provisions that are referenced as part of the standard, boilerplate language that automatically becomes a part of every coal NPDES permit issued by WVDEP without any affirmative action on the part of the agency. By contrast, the express selenium effluent limits and compliance schedules in the reissued Permits were specifically inserted by WVDEP as part of the permit reissuance process during which WVDEP evaluated the unique characteristics of Fola's coal operations and reviewed chemical monitoring data of the discharges from its outlets. *See* Ex. 1 at p. 29; Ex. 2 at p. 26.[4]

Employing the tools of permit/contract interpretation discussed above, it is clear that even if the boilerplate provision incorporating § 5.1.f into Section C of Fola's Permits is given the meaning advocated by Plaintiffs, that provision would still not control selenium discharges from the outlets regulated by the Permits in light of the fact that WVDEP later inserted more specific and prominent selenium limits and compliance schedules into the Permits

---

[4] "Selenium effluent limits are being added to this permit due to high concentrations in table 2-IV-A, B, C and TMDL allocations for this permit." Ex. 1 at p. 29. "The selenium concentration on Table 2-IV-C for Outlet 009 was 3.57 μg/l which is below the water quality standard of 5.0 μg/l. Therefore, selenium limits will be added to this permit […] and the limit for the in-stream outlet (Outlet 009) will be 4.7 μ/l Monthly Average and 8.2 μg/l Daily Maximum. Other sampling at Outlet 009 indicates compliance with selenium limitations may be difficult, therefore a compliance schedule of 26 months have been granted for Outlet 009." Ex. 2 at p. 26.

during permit reissuance. This Court agreed with this argument in its *Alex Energy* Order and should apply the same reasoning to the Permits at issue in this proceeding.

      **2.**    **Plaintiffs' Claims for Injunctive Relief and Certain Civil Penalties Are Moot**

      Article III of the Constitution mandates that a court hear only continuing cases and controversies. *See United States v. Ala. S.S. Co*., 253 U.S. 113, 116 (1920). A case becomes moot when the issues presented are no longer "live," or when then parties lack a legally cognizable interest in the outcome. *Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir.2007) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). If a case has been rendered moot, federal courts are divested of subject matter jurisdiction to decide the questions it presents. *Simmons v. United Mortgage and Loan Inv., LLC*, 634 F.3d 754, 762 (4th Cir. 2011). Developments that occur subsequent to the filing of a citizen suit may moot the case. *Envt'l Conservation Org. v. City of Dallas*, 529 F.3d 519, 526 (5th Cir. 2008). "As a general rule, any set of circumstances that eliminates the actual controversy after the commencement of a lawsuit renders that action moot." *Id*. at 527 (citing *Carr. v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061-65 (5th Cir. 1991).

      When mootness is asserted as a defense in environmental law contexts, courts evaluate the likelihood that the alleged wrongful behavior will recur. This Court has ruled that the standard used to evaluate the possibility of a future recurrence depends on whether the cessation of the wrongful behavior was voluntary or mandatory. *See OVEC v. Hobet Mining, LLC*, 2008 WL 5377799 at *6-7 (S.D.W.Va. 2008). In *Hobet*, this Court held that when the cessation of the allegedly wrongful behavior is mandatory, courts should use a more deferential standard and determine whether there is "a realistic prospect that the violations alleged in [plaintiffs'] complaint will continue[.]" *Hobet Mining* at *7 (quoting *City of Dallas*, 529 F.3d at

528-29). If there is no realistic prospect of the violations recurring, then Plaintiffs' claims are moot. *Id.*

Here, the cessation of the allegedly wrongful conduct was mandatory. Fola was ordered by WVDEP to submit applications for modification or reissuance of the Permits to add selenium limits and compliance schedules. *See* ECF No. 32-4 at p. 4 (WVDEP Order). Fola complied with WVDEP's order (*see* ECF No. 32-6 at p. 1, Fola's Responses to Interrogatories), and WVDEP reissued the Permits with future selenium limits at the four outlets at issue in this case and compliance schedules with interim milestones that Fola must meet by specified deadlines. The requirements of an NPDES permit are mandatory; a permit holder is subject to a variety of consequences and penalties for violations of its permit. *See, e.g.*, W. Va. Code §§ 22-11-8, -12, -22; WVCSR §§ 47-30-3.1.a.1, -5.1.a, -5.1.c. If Fola violates the terms and conditions of the reissued Permits, including the deadlines for milestones in the compliance schedules, interim monitoring and reporting of the levels of selenium in its discharges, and/or compliance with the final selenium limits when they become effective, Fola could be subject to administrative or judicial enforcement action by WVDEP or a citizen suit brought in federal court to enforce the requirements of the Permits. W. Va. Code §§ 22-11-12 and -22; 33 U.S.C. § 1365. Thus, the more deferential mootness standard for mandatory cessation applies in this case.

Applying the "no realistic prospect" standard, not only is there no realistic prospect that Fola's violations of selenium water quality standards will recur, but there is no prospect whatsoever that violations of selenium water quality standards could recur.[5] As this

---

[5] Therefore, even if the more stringent mootness standard for voluntary cessation of unlawful conduct were applied, this case would meet that standard. Under the stricter standard, the defendant must demonstrate that "it is *absolutely clear* the alleged wrong behavior could not reasonably be expected to recur." *Hobet* at *6 (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987)). Fola's Permits no longer prohibit discharges of selenium that violate water quality standards, so it is absolutely clear that Fola's alleged violations of general permit condition prohibiting violations of water quality standards cannot possibly recur.

Court found in *Alex Energy*, the compliance schedule and future effluent limits for selenium "trump" the general provision requiring compliance with water quality standards, so the reissued Permits do not require Fola to comply with selenium water quality standards. Thus, it is simply not possible for Fola's discharges of selenium to cause violations of water quality standards as of the date that the Permits were reissued.

Injunctive relief is prospective in nature, so "[a] claim for injunctive relief may become moot if challenged conduct permanently ceases." *Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351, 354 (8th Cir. 1998) (holding that claim for injunctive relief for alleged violations of NPDES permit became moot when NPDES permit terminated). Because the Permits no longer prohibit Fola from discharging selenium in excess of water quality standards, there is nothing for the Court to enjoin. This Court has no authority to grant injunctive relief requiring Fola to take steps to ensure that is discharges do not cause violations of selenium water quality standards, as Plaintiffs are requesting, because such discharges no longer constitute violations of the Permits.

When considering mootness, a court considers injunctive relief separate from civil penalties. *Hobet* at *7. The reissuance of the Permits has rendered Plaintiffs' claims for civil penalties partially moot. Civil penalties may be imposed when a permit holder violates a condition of its NPDES permit. 33 U.S.C. § 1319(d). Now that Fola's Permits have been reissued with future selenium limits and compliance schedules for achieving those limits, Fola's discharges are no longer required to comply with water quality standards. Since Fola's discharges of selenium cannot constitute violations of the general condition requiring compliance with water quality standards, civil penalties cannot be awarded. Thus, any claims for civil penalties for discharges that occurred after the Permits were reissued have been rendered moot.

### III.    CONCLUSION

Based upon the foregoing, Fola respectfully requests that the Court grant summary judgment in its favor regarding Plaintiffs' claims for declaratory and injunctive relief and its claim for civil penalties for any discharges that occurred after the reissuance of the Permits.

Respectfully submitted,

FOLA COAL COMPANY, LLC

By counsel:

/s/ *Jennifer L. Hughes*
ROBERT G. McLUSKY, WVBN 2489
JENNIFER L. HUGHES, WVBN 9676
MATTHEW S. TYREE, WVBN 11160
JACKSON KELLY PLLC
1600 Laidley Tower
P.O. Box 553
Charleston, WV 25322
Phone: (304) 340-1000

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

**OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
and SIERRA CLUB,**

      **Plaintiffs,**

**v.**                                          **CIVIL ACTION NO. 2:12-cv-3750**

**FOLA COAL COMPANY, LLC,**

      **Defendant.**

## CERTIFICATE OF SERVICE

        I, Jennifer L. Hughes, do hereby certify that on April 4, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

        Derek O. Teaney, Esq.
        Joseph M. Lovett, Esq.
        Appalachian Mountain Advocates
        P.O. Box 507
        Lewisburg, WV 24901
        dteaney@appalmad.org
        jlovett@appalmad.org
        *Counsel for Plaintiffs*

                                */s/ Jennifer L. Hughes*
                                  JENNIFER L. HUGHES, WVBN 9676
                                  JACKSON KELLY PLLC
                                  1600 Laidley Tower
                                  P.O. Box 553
                                  Charleston, WV 25322
                                  Phone: (304) 340-1000